I'd like to briefly start with kind of a quick summary of where we are, it's a little convoluted, just kind of back up a little bit. I did not originally represent the defendant before the district court. Once he filed a notice of appeal, he alleged ineffective assistance, at which point his prior counsel was removed and I was appointed on this matter. I began reviewing this matter and ultimately decided to file an Anders brief on behalf of Mr. Kemp, alleging a few things, addressing a district court overruling a sentencing objection as to the victim's age, denial of variance, alleged ineffective assistance. That was all set forth in an Anders brief. The government subsequently filed a letter with this court, informing this court that they were electing not to file a response brief. At the same time and the same date, they filed a motion to dismiss this appeal, alleging that the plea agreement had an appellate waiver provision that was valid and was unambiguous and plainly implied in the plea agreement. We are asking the court to please deny that motion to dismiss. Our position is that the plea waiver was not knowing and intelligent. The plea in Rule 11 hearing was set and scheduled. Pursuant to that, pursuant to Rule 11, specifically Rule 11B1N in court, the Rule 11 hearing was required to go over. The court must inform the defendant and determine the defendant understands the terms of the plea agreement provision waiving the right to appeal. Unfortunately, that's not exactly what occurred. Our position is that's not what occurred during the hearing at that time. The defendant was before the district court. The district court says, you're entering into a written plea with the government. The defendant responds, I am. Says, you're going to plead guilty. Count 8, waive your right to appeal. Says, yes. The court informs the defendant, tells the defendant, he doesn't waive his right to appeal, does he? The government states, I'm sorry, Your Honor. He says, he doesn't. Looking at page 2C, the government says, well, it's now 2F. It's because 2F. The court then states, waive your right to appeal, reserving your right to appeal from the sentencing excessive guideline. So that's what they inform the defendant. Our position, Your Honor, is that the district court failed to strictly comply with Rule 11B1N. They didn't review the appeal waiver with the defendant, and they didn't ensure that he understood it. There was not a question to the defendant, have you reviewed this plea agreement with your attorney? There was no questioning to the attorney, have you reviewed this plea agreement with your client to make sure he fully understands it? Do you believe he fully understands it? So that didn't occur, to the best of my knowledge, of reviewing the record on this matter. So our position is that the appellate waiver within the plea was not knowing and intelligent or failing to inform the defendant specifically of that. So we'd ask the court to deny that motion. After that occurred, and while that motion was pending, this court ordered supplemental briefing on two issues. We complied with that order and briefed the two issues. The government filed a supplemental response brief in response to our supplemental brief, bringing up at that point another motion to dismiss that the defendant's notice of appeal was untimely. This is the first time that was raised. We asked the court to deny that. Within the government's brief, they cite the Oliver case, which again, in Andrew's brief, was filed. The government elected not to file a response brief. But then the court in that case was looking at whether they could, on their own, dismiss the case. That case was very different from this one. That was a case where the defendant had, in judgment, been entered. It had been over three years before the defendant filed a notice of appeal. The 2255 motion that had been filed had been adjudicated. That all occurred, and then the defendant, after 2255 is adjudicated, after three years, files the notice of appeal. The general rule the court states in Oliver is that if the government fails to object promptly to untimeliness in either its merits brief or earlier motion to dismiss, it forfeits its right. I did mention in my reply to the government's response, I did mention the United States v. Turner, which is a court order that I located, that seemed to be exactly the same thing as here, where there was an Andrew's brief, the government had elected not to file a response brief, this court had ordered supplemental briefing, and within the supplemental briefing response, the government alleged untimeliness for the first time. That's an unpublished case, counsel? Correct, it's an order. And doesn't that, I'm having trouble squaring that with our Poindexter case, where we said that if there's an Andrew's brief filed, the government is entitled to do nothing and allow the court to do its Andrew's review. So if we're just talking about Andrew's on its own, I may be mistaken, but it seems to me there's a reasonable basis for saying it might be appropriate for the government not to file, not to address untimeliness earlier. But the thing that's different here is they did file a motion to dismiss. So that seems to kind of, if you file a motion to dismiss on the appellate waiver, does that kind of take you out of the protection that Andrew's may provide? And that's exactly our point, Your Honor. Fourth Circuit Rule 27F2 states a motion to dismiss must be filed with the time allowed for filing a response brief. Looking back at the court's rulings, it's pretty clear that they have to file a motion to dismiss in either merit's brief or filing of a motion. The rule, though, doesn't really mention supplemental briefing, does it? It does not. So how do we figure it out? In other words, is a supplemental brief a subspecies of formal brief, as referred to in Rule 27, or is it something different? Well, I think if we go back to the Oliver case, and I think that's why I think it's something different, is in Oliver they state that the government must object promptly. Again, it says in merit's brief or your motion to dismiss. So the government had an opportunity to raise the timeliness issue within its initial filing. The government, you know, an Andrew's brief was filed, the government didn't have to file a response. I think it would be a little bit different if the court just said, if the government had filed nothing in response, and this court issued a supplemental briefing order, and at that point the government raised, I think it would be a little different, especially in light of Oliver, because the government did file a motion to dismiss, alleging the enforcement of the appellate waiver, failed to mention timeliness. So they did respond. They responded to the Andrew's brief. They elected not to file a formal brief, but they did respond. They responded in the form of the motion to dismiss. So that we pretend that they... Counsel, can I ask you, what weight, if any, should we put on the fact that the briefing order, when the court called for the first round of formal briefs, I don't know what to call them without trying to slant an argument, but the first set of briefs, the briefing order does include this waiver warning, that failure to file a response brief or a motion to dismiss within the time allowed for filing a response brief may result in waiver of defenses or loss of the right to be heard, and it cites our Rule 27F. I mean, if you get this with the briefing order, isn't it pretty clear that the response brief we're talking about is the response brief that is called for in this order? Well, I understand, but again, 27F references response brief, but if you look at Oliver, it says you have to do it within the time frame. It must object promptly to untimeliness in its merits brief or earlier motion to dismiss. And so that's what they failed to do. There was an earlier motion to dismiss. They absolutely had the opportunity to raise it. At that point, they looked at the case. I guess I'm asking you to imagine a situation where they hadn't filed the motion to dismiss, and I'm suggesting that it is still pretty clear in light of this notice that you need to file a motion to dismiss within the time allowed for filing a response brief, that the response brief we're talking about is the one on the first page of this order, which is due originally on 8-19-2021. I don't know how you could read this notice to be referring to a supplemental brief that might or might not come in at some later date. But again, it's if a supplemental briefing order had never been issued. That's my point. I'm trying to help, but I feel like I'm not being clear enough, so let's just move on. Thank you. His court is the supplemental briefing issues in this matter. His court had asked the parties to address whether the district court's errors and omissions amount to cumulative error sufficient to undermine the validity of the plea. We contend that that did undermine the validity of the plea. Again, Rule 11 states that the defendant must be informed of the rights and make sure he understands those rights. I won't list everything that I had in my brief. Counsel is saying that there's some back and forth between you and the government about the deficiencies and whether there are any or whether there was prejudice or substantial compliance. Here's my question. There was no objection at the time, so we're on plain error review. I didn't see in your brief how you argued, assuming there were deficiencies in the Rule 11 hearing, how your client would not have entered the plea but for those errors. I understand, certainly, that that's a threshold matter in this case. Am I right that there was nothing in your brief where you said that third prong of the plain error review, you didn't address that? No, but I did address the ineffective issues and the fact that this was an ineffective assistance of counsel matter. If you look at the notice of appeal that's in the record here, the defendant alleges numerous issues that he had with his attorney. If you look at the record on his face, you can see that there's nothing in the record to establish that the defendant understood what was in that plea. There's nothing in the record. If you look at the appellate notice, if you look at how the Rule 11 hearing went forth. But don't you have to show that had the court complied with Rule 11, your client would not have entered the plea? That's correct. That is the third prong. What did you do to meet that obligation? By establishing the fact that the defendant wanted new counsel in this matter. He wanted new counsel based upon the alleged ineffectiveness, the lack of, I guess, attorney-client relationship and the problems they had. That establishes on his face, you know, 2255 has not been filed here, so we don't have additional evidence that may come out through that, which I think would be potentially important if they ever get to that level. Counsel, just as almost a housekeeping question, your client wants to withdraw his guilty plea? He does, Your Honor. Okay. He didn't move, was a motion ever filed? No, Your Honor. You have confirmed that, because I know sometimes we order a briefing on this question and actually the client doesn't want to withdraw the plea. Again, his position, if you look at the ineffective assistance, that's where it indicates and shows that if not but for those errors, he would not have entered his plea. One additional quick matter is the second issue. I believe the government has agreed that the district court failed to orally pronounce the non-mandatory conditions of supervised release. Their position is that a re-sentencing is unwarranted. I believe that's a different situation. They cited a collateral matter, but that was where a defendant had mandatory life. We believe that's very different. This was a guideline range of 360 to life, not even a guideline range of life. So to go back, if the guilty plea, if he's not allowed to withdraw it, we would ask that he be allowed to go back on re-sentencing. Is your position that we're required to vacate and remand under Roger Singletary and those line of cases? Yes, Your Honor. Is the right to have the supervised release conditions announced in the defendant's presence, is that a procedural right or a substantive right? I believe it's a substantive right. What's the basis of that? It seems like our cases say it stems from Rule 43 of the Federal Rules of Criminal Procedure. What's the basis of saying it's a substantive right? Because he has the right to know what his sentence is. He has the right to know what his sentence is and what he's being sentenced to, which is why the defendant is always present for that to be able to contest an objective before the district court. I don't disagree with that reasoning. I'm still trying to figure out whether that makes it procedural or substantive. Maybe that's just the reason. Have you seen anything that says it's substantive? No, Your Honor. This court should dismiss Kemp's untimely appeal. He filed his notice of appeal more than three months after the amended judgment in this case, and the government moved to dismiss the appeal in its response brief. And I emphasize at this point the word response brief. I'm using it in a functional matter, not necessarily a very technical matter, because Kemp is arguing that the government should have raised the timeliness issue in a response brief to his Anders brief. But a response brief was unwarranted because in his Anders brief, Kemp stated that the district court committed no legal error, and he submitted the case to this court for its independent review. Because Kemp raised no legal errors in his Anders brief, there was nothing for the government to respond to. But the government decided to file a motion to dismiss asserting appeal waiver, right? It did do that, Judge Keenan, if I might anticipate. Why? You know, it's just as easy for the government to count the days on the calendar as it is to identify an appeal waiver, perhaps even easier because there's no interpretation required. You just count. So what is the basis and logic for doing one and not the other? Just a mistake, you're saying? I don't know the answer, and that answer is not in the record. And if I might anticipate as to where you might be going with that, it is generally the case with respect to trial issues and pretrial issues. If the government raises one theory at trial and doesn't raise a second theory at the time that it is absolutely required to raise it, then that constitutes a waiver. But in this procedure, in this court at the appellate stage, where this court in Oliver has said that the government has a choice as to whether to raise it in a motion to dismiss or in its Anders brief, and Rule 27 from this court says that we can raise the issue no later than in its response brief, we're saying we have the option to raise it at either time. The failure or the omission to raise it at the earlier motion to dismiss stage doesn't constitute a waiver at all. And that's only because that's what this court said in Oliver, and that's what Rule 27 says. So it's really irrelevant. What about Rule 27? It doesn't really talk about what a supplemental brief is, does it, or a supplemental response. Is it a subcategory of a response brief? And governed by the same admonitions and terms of the rule? I would say, Judge Keenan, that we should look at the term response brief, as I just mentioned earlier, in a functional sense, not in the sense of a labeling sense, which in our view would be highly artificial. What happened at the Anders stage, as I indicated earlier, there was no reason for the government to file a response brief to respond to anything because the defendant hadn't raised anything to respond to. But then when the court, after doing its own independent evaluation, and decided that it wanted to specify some issues, then it issued another briefing order. The defendant filed a brief that raised certain issues. Yes, it's called a supplemental brief. That's the technical term. But this is the first instance in which the government responded to claims raised by the defendant. And so that we submitted under Rule 27, whether you call this a supplemental brief, because that's the formal title on the brief, this was our first response brief to answer the arguments that were raised by the defendant in this case. So we would urge the court to take a very functional approach to the definition of a response brief. And to reply, any brief in which the government is responding to the other side's brief for the first time in the case. Counsel, I think I understand that last point. In the Anders situation, maybe that is the first response, but I'm having trouble with the way you're referring to Oliver. It seems to me Oliver states the rule that if the government fails to object to an appeals untimeliness in either its merits brief, and I get your argument that your first merits brief here was the supplemental brief. I get that. But, or, as Oliver says, in an earlier motion to dismiss. And you have an or earlier motion to dismiss. So how are you saying Oliver helped you? Well, it helps us because then this court, I believe, has Rule 27, which gives the government the option to raise a motion on procedural grounds no later than the response brief. And this is no later than. What Oliver does is give the government. It doesn't actually say that, though, Counsel. It says within the time allowed for the filing of the response brief. It doesn't say with the response brief. It says we give you an amount of time. We gave you an amount of time. It was due 8-19-2021. We put in the briefing order. There's a risk that you will lose or waive your defense if you don't raise it now within the time allowed for filing a response brief. And you're telling me that you put all that together and you think, oh, no, that means if and when we file a merits brief? What I'm saying there is Oliver does refer to the motion to dismiss or the merits brief. What I'm saying in the context of an Anders situation is to look at the government at the court's initial briefing schedule. And, yes, it does say you have to file a response brief. But then when the defendant files an Anders brief and says we're submitting this case. I totally understand your argument. I'm just saying I think you have misstated rule 27-F, which does not say you should file with the response brief. It says you should file within the time allowed for the filing of the response brief, which to me suggests that what we are trying to say is within the time allowed for filing of the response brief, which in this briefing order was originally, I understand it was extended, 8-19-2021. That just seems like a perfectly straightforward reading of the texts in front of us. Well, that's appropriate. But then the court ultimately, after it made its own independent evaluation of the case in this particular case, then issued a supplemental briefing. But the reason it did that, if I may, is because you filed a motion to dismiss in part based only on the appeal waiver. At that point, per Oliver, we are instructed to assume that the reason the government didn't raise timeliness is because it doesn't want to stand on it. It's going to litigate to the merits. So our court, taking very seriously its Anders obligations, spends a lot of time screening to see if there are issues presented that are not covered by the appeal waiver. It finds them. It orders supplemental briefing. And all of that was a waste of time because now the government gets to come in and say, gotcha, we actually want to stand on two grounds for our motion to dismiss, including timeliness. Can you see why that would seem really frustrating to us? Well, I can understand why when the court subsequently issued the order, it may have assumed there were no additional pre-trial motions. It's not that we may have assumed it. Under Oliver, we have to assume it. Oliver says if there's no timely objection on timeliness grounds, we have to assume that means the government is ready to litigate on the merits. And once you file a motion to dismiss that raises some grounds but not timeliness, I think we were bound under Oliver to go through all of the work of seeing whether there were additional non-waived grounds that ought to be addressed by counsel. Then when the court subsequently issued the briefing schedule after doing its own independent review, then it is calling for, in effect, a response brief. I understand your frustration, Judge Harris, but I'm saying the government effectively from this court had two opportunities to file a response brief, from the first order, and then when the defendant didn't file a brief but he filed an interest brief, that obviated the need for the government to file a response brief. Once you issued the order, then the defendant went ahead and filed a brief, and now the government in its first response brief in this case is filing it. You found that in Rule 27F? I mean, the two opportunities? I don't see where it says the government gets two chances. Well, the two chances results from the unique situation in which the defendant initially files an interest brief, doesn't file a merits brief, which then causes the government to file a response brief in which it has to then raise any non-frivolous motions or whether it, I'm sorry, non-frivolous, it has to raise a motion to dismiss. In this particular case, after the court had done its independent review of the case and it issued its briefing schedule and then the defendant filed a brief that called for the government to respond to it, the government raised the untimely notice in its supplemental brief, which the government submits is the functional equivalent of a response brief in this case. There was no other response brief filed earlier because the defendant had filed an interest brief and there was nothing for the government to respond to. And I do think that that would be a very compelling argument if 27F said, you should file this with a response brief rather than within the time allowed for the filing of the response brief, which you may or may not file, but that's the amount of time you have to file this motion. Well, I would submit that within the time for filing the response brief includes the time that the government actually does file the response brief in the case. I can imagine that it might be at an earlier stage, like maybe a week ahead of filing the response brief. As long as it's filed in the response brief, then this court has all of the government's arguments that it wants to present in this case, the motion to dismiss, the Rule 11 inquiry, the supervised release conditions and all of that. But anyway, inasmuch as the court has heard this and what I would like to do now is go to the Rule 11 inquiry, our position is that the Rule 11 inquiry did not result in reversible plain error. The defendant has claimed that there were eight violations of Rule 11B1 and also a violation of Rule 11B2. We have submitted in our briefs that there was substantial compliance with much of Rule 11, but we acknowledge that there were some violations. And so what I would like to do, unless the court has any questions, is to go right to the plain error analysis. Now, with respect to the 11B1 inquiry, Kemp cannot show any prejudice under the substantial rights prong of the plain error doctrine because with the exception of the perjury advice in 11B1A, all of the remaining advice was essentially contained in the plea agreement. The one exception is that the plea agreement and the inquiry by the district court did not include the possibility of a perjury prosecution. But there's never been any indication that Kemp would ever be prosecuted for perjury. And so, yes, there was a violation there, but that was not prejudicial in the context of this particular case. And so since the defendant cannot show that there was a violation of the substantial rights prong, there was no basis to reverse the district court for the 11B1 violations. As to the 11B2 advice, the record as a whole shows that the plea was voluntary and that there were no threats or promises made to Kemp to force him to plead guilty. Kemp was a 54-year-old man who pled guilty to a particular count under the plea agreement. The agreement itself said that there were no other agreements to indicate that there were no other promises in the case. He stated on the record that he had consulted with his attorney. He was satisfied with his attorney. And the district court made a specific finding that the plea agreement was voluntary after undergoing a factual basis for the plea. And the attorney also said that he had no reason to question Kemp's competence. For those reasons, we would say that if there was a failure to perfectly comply with 11B2, it was not prejudicial in the context of this case. And then I would like to now go back to the Dominguez-Benitez standard. The defendant can only get reversal for an 11B violation or series of violations if he can show that he would not have pled guilty otherwise. He cannot make that showing in this case. At sentencing, Kemp stated that he hated himself and he sometimes wished to die. And through counsel, Kemp said that he was pleading guilty so that his children would not suffer any further pain or abuse from him, and that's at 62 of the joint appendix. There is no reasonable probability that Kemp wanted to go to trial in this case. So despite the district court's failure to comply with Rule 11 in every respect, there was no plain error in this case requiring reversal. Counsel, the Notice of Appeal says this, JA 90, I would have never agreed to do so. I would have never agreed to so many false allegations by lying to the court for all of the things I did not do had I known I'd get life regardless. He says that now. I'm sorry. Go ahead. Yeah, yeah. He said that on his Notice of Appeal. What's your take on whether that is enough to meet the third prong? Well, the decision to plead not guilty is the final requirement under the plain error doctrine. He did not make this a trial. And what he had to do is make some showing then that he would not have. So the timing of it is what you're saying? That's what has happened. At trial, it was pretty clear that he did not want to go to trial under any circumstances. He was very ashamed of it. Again, he said that sometimes he wished he was dying. He said that he hated himself. And through counsel, again, he said he didn't want his kids basically to put them through any pain. There was not a chance, no reasonable probability, that he would have gone out of this plea agreement and gone to trial and faced those children at a trial where five or six of them would have come up and testified to the horrific sexual abuse that he did to them. Can I just ask you a question? I find this case sort of complicated. Am I understanding right? At the time he enters into the plea agreement, both parties understand that this is not a life sentence case. Their understanding is that the guidelines range stops at something like 30 years. And it's not until after. It's nobody's fault. But then the PSR comes out, and it turns out actually the top of the guidelines range is life. So when he's pleading guilty, he doesn't think life is within the guidelines, and neither does the government. The government objects to the PSR. It does seem like a sort of troubling case in that he pleads guilty not understanding that a life sentence would be within the guidelines. He does reserve the right to appeal anything outside the guidelines. It turns out life is within the guidelines. So that's fine. And it's also an unusual case because usually when the question is would this person have pled guilty anyway, they got something out of the plea agreement. But this guy has a life sentence. I mean, he could not have done worse. And I'm bracketing for a minute what he said at trial about I want to spare my children having to go through trial. But when you add it all up, it's just sort of I've never, it just seems like a case where maybe there is some question as to whether this person would have pled guilty. I don't think there is any question, Judge Harris. I think, too, if you look at J95 in the plea agreement, it indicates the maximum term of imprisonment is life. I mean, he knew he was liable. Yeah, but then the guidelines thing, like it lists the eight guidelines factors that everyone agrees on, and when you add it up, that actually got you to, I think, Actually, I believe this is on page 95. It talks about the maximum term of imprisonment. That's before the court goes into the I guess just am I remembering right that at the time, both the government and the defendant didn't think he was going to get that two-year enhancement for a victim between ages 14 and 16, I think it was. So at the time, both parties actually thought that the maximum guidelines range, not the maximum statutory sentence, but that the guidelines was going to cap under life. Isn't that right? Well, there was an indication along the lines, but at some point, the government moved for life imprisonment, and the district court imposed the term of life imprisonment. I guess I'm just genuinely asking you, am I thinking of the right case? Am I remembering correctly that when the PSR came out, the government objected to it because it thought the guidelines range was not life? I believe that the district court at one point indicated that under the guidelines, it was 360 to life. And so he knew that the defendant knew that when he was being sentenced, he was facing a sentence that would have included life. And this defendant, when he learned about what all of his adopted children had said to him at the sensing hearing, could not have really believed he was going to be getting anything less than that. I mean, the district court in this case made a point of saying that there was no mitigation facts at all, and that he never thought he would ever get out of jail. And by the way, I would like to segue then into my third point, since I only have a minute left, is we agree that in this particular case that the district court erred by not announcing the non-mandatory conditions of supervised release at sentencing. But we think the remedy in this particular case, since he is serving life, and he will not be doing any term of supervised release as a practical matter, we think that the remedy in this particular case is simply to strike those conditions from the judgment. It wouldn't be warranted to have a full resentencing hearing when he's never going to be having a, he's never going to be out, he's not going to be doing supervised release. So we agree, strike those conditions from the judgment. What authority under Rogers' Singletary System allows us to do that? It may make a lot of sense logically, but we get joint motion sometimes for that. But doesn't our law say we have one remedy, and one remedy only, and it's to vacate and remand for full resentencing? You said that in Rogers' Singletary, those, if I may have a few extra seconds, you said that, and those were term of year sentences in the Calderon case, which is an unpublished decision from this court. Calderon was a mandatory life case. Mandatory life, but we think extending it to discretionary life, same effect, he's not going to be getting out of jail. So he's never going to be doing supervised release. And so we think the appropriate remedy in this type of case is to strike those conditions from the judgment. So I just want to understand the rule. I mean, Calderon, I mean, how could, not to, I'm having trouble understanding how Calderon is appropriate, even given the mandatory life under Rogers' Singletary. I mean, three of us thought that, so that's, I'm not trying to be overly critical, but I'm genuinely, sounds like you have a practical exception to Rogers' Singletary. And maybe we should, but I don't see that in our case law. Well, other than Calderon, I don't have any other case law other than that case. But that case did involve a life sentence, and it did not involve term of year sentences. But also, can I, Calderon, also, that was the government asking for a resentencing. And the court said, no, no, the government's interest in a resentencing, those are protected when you come to a life sentence. But here it's the defendant asking, and it's not a mandatory life sentence, so I suppose there's some chance that the sentence could come back slightly lower on a resentencing. And, I mean, the way we got into this, it was always the government who wanted to just strike the conditions. That was sort of the government-friendly, wait, I'm going to get this wrong, shoot. The point of the resentencing was to protect the government's interests. It was the defendant who said in Singletary, just strike the conditions. I don't want to be resentenced, just get rid of those conditions. That's what I want. And we said, no, the government has a right to go back to a resentencing and get those conditions reimposed if it can. So this is sort of a pro-government, I don't want to, that's reductive, but you know what I mean, it was in response to the government concern that it wanted a chance at a resentencing so that it could get these conditions reimposed rather than what the defendant was asking, which was just take them off the judgment, I'm good. So I feel like now to start making exceptions at the government's behest, like no, no, there's a category of cases where we don't want what we asked for in Singletary. We don't want to go back. If nothing else, it gets kind of complicated. It does get complicated, but again, that's why I'm relying on Calderon. I realize the mandatory license. Again, that was a little bit different because there it was the defendant asking for it. And we have said since Singletary, there it was the government asking to go back. We have said since Singletary the defendant also has a right to this full resentencing. I don't know why the defendant wouldn't have that right here. But logically the defendant is not going to be getting out of jail, and Judge Boyle indicated that he was never going to be getting out of jail. To have a resentencing where the defendant comes out of jail and has a resentencing in which basically the whole purpose of that is to remove the improper conditions of supervised release when he's not going to ever be out of jail to serve those. I assume that probably they'll be reimposed orally this time, but one way or the other, right? So is the government's objection to doing this, like the straightforward thing to do would be to follow Rogers and Singletary, vacate and send it back for a resentencing. And the government's objection to that is it's just a waste of everybody's time. You don't think we should waste time? I mean, why do you care? Well, I think that remedies should be proportional to violations. I think that's a fundamental principle of law. Right, and in Singletary the government said the proportional thing to do is send it back for a full resentencing. Do not let this guy benefit by just striking them from the judgment. But in a case involving a defendant who is never going to be getting out of jail, that's the big difference. He's never going to be doing a period of supervised release. To send it back for a full resentencing for the court to say, I made a mistake with respect to supervised release conditions, we think is a disproportionate remedy. You can achieve everything under Rogers and Singletary by removing and striking those conditions from the judgment. Why wouldn't we, I mean, it seems to me we've got a variety of interest here. We've got the defendant's interest under Rule 43 to be present at the time the sentence is announced and to object if need be. And we've got the district court's intent to think about. I mean, a lot of our cases talk about you were trying to discern what the district court intended. And so maybe the district court intended to have those two conditions there and striking them eliminates the district court's ability to say, hey, no, no, I meant those to be there and here's why, and I want to explain why. I find all these cases very confusing, quite frankly. I mean, some places say that's a nullity. If it's a nullity, your approach makes sense. But then we say go back and do a full rehearing. Some cases we let the written judgment inform an ambiguity. Some procedural errors we allow to go back just for correction of the condition at issue. It seems like we've got a lot of interest, and I'm having trouble making sense, but I'm not sure that at least as low currently is that Rogers and Singletary have a straightforward rule. You might have a quarrel with it, but unless we create some exception, that's what it says. I think you created an exception in Calderon. Now whether or not there was the government or defendant wanting to have it or not, Calderon says that you can, in a case involving life, strike the conditions from the judgment. That's all I'm asking you to do is just apply Calderon to this particular case. The fact that this is discretionary life or mandatory life doesn't obscure the reality that this defendant is not going to be getting out of jail. He's not going to be serving these supervised release conditions. So whether he needs to have them read to him by the judge in open court, we think is probably disproportionate to the error that was committed. By the way, this sentencing occurred I think just about a month after Rogers was decided. Is it customary if district court judges are issuing life sentences for them also to do terms of supervised release? Like if everything you say makes kind of practical sense to them, why are there supervised release conditions at all? What did this court have in mind? I wouldn't want to answer questions. In other words, supervised release conditions have been imposed on defendants for a long, long time, and a certain amount of inertia enters into all these sorts of things. All I'm saying is because of Rogers and Singletary, that upended everything. And so what's happening now, I'm sorry, I'm way over time. I'll stop if you want me to. I'd like to hear. I think, again, you want to take a pragmatic approach. I think Calderon has already said that in the case involving a life sentence, strike him from the judgment. We're just asking you to follow Calderon. That's all we're asking you to do in this case. Thank you. Thank you. I guess just to briefly follow up on the most recent argument by counsel, again, the difference here is that Calderon won't have mandatory life. I know we all know what the district court stated during the sentencing hearing, its feelings as far as him getting out. I guess the reality here practically is we assume Judge Wool would be hearing this case for resentencing, but we don't know that. And so I have a difficult time saying, well, we know what's going to happen. We know what Judge Wool is going to do. In all likelihood, this will be back before Judge Wool, but I guess we don't know that. And because we don't, we don't know which judge is going to hear this case. So I think it is appropriate to follow Roger's remedy and go forward. As far as counsel's argument and the situation of where everybody intended to be, you are correct on your pre-sentence report. This is the correct case. The terms of enhancements and enhancement provisions were negotiated in the plea agreement. The understanding from reviewing of the record is that the parties had looked at an investigated report and that the victim was 16 years of age. So that was the basis of that enhancement not being addressed within the pre-sentence report. That's my review of the record and what it indicates. So that when the parties were trying to put together an appropriate sentence and when this negotiation occurred, the government was trying to, from what I see, pop them with every single enhancement possible. And they did. But they left that out because it was the parties understanding this victim was 16, therefore it would not apply. Again, my review of the record and understanding is that a later investigative report came back that the victim was potentially 14 or 15 when this happened. So then the PSR comes back and the two-level increase comes up. So you are correct that when this plea agreement was negotiated between the defendant and the government, this was, again, statutorily a max of life. But the advisory sentencing guideline range that the parties anticipated and the parties negotiated in the plea agreement was for a term less than life. But when the second investigative report comes out, then all of a sudden that two-level increase pops up. Now all of a sudden he's 360 to life, which I think is significant here. I wanted to mention that also. The other thing as far as the Rule 11 here, I would like to again mention that not every term. I mean, the plea agreement mentions that he could appeal from a sentence in excess of the applicable guideline range. Yet at the plea hearing, that's not what was relayed to him. He's informed. I mean, he's standing there and the court says, you've got the right to appeal. And then the court says, well, you can appeal a sentencing excessive sentence. So I can't speak for Mr. Kemp, and it's not in the record, but he's being told that he can appeal an excessive guideline sentence. Life is most certainly an excessive guideline sentence. So I just wanted to mention that also. As far as going back to and looking at the timeline of this issue, I guess the difficulty that I see here is the court issues a supplemental briefing order, and that's because the court is interested in these issues based upon its Andrews review. But when the government now makes a motion to dismiss based upon timelines, they're really getting a second bite at the apple. They looked at this case and reviewed this case just like I did, and they said, wait, there's an appeal waiver here. Let's bring that up. Let's file that motion to dismiss. Can they do that? Can I ask you a question on that issue? Judge Harris asked some questions about the motion to dismiss is due, and it referred back to a date that was the original response date from the briefing order. And one way of looking at this is there's a deadline by which you must file your motions. If not, you're probably waiving them. There's a different way of looking at that and saying an Andrews brief comes in and kind of essentially extends that, if you will, until there's the first merits brief. Here, your argument, you're saying at least in part, we don't need to worry about that issue because we got a prior motion to dismiss. Oliver tells it if you're going to file one motion to dismiss, you don't get to keep having multiple bites at the apple. Correct. Let's assume we don't have the motion to dismiss. Would you agree with the government at that point? Or do you say, no, we go to the objective date that's in the briefing order? I believe that. I think if they had not filed their initial motion to dismiss, then I think Oliver would be on point. Because Oliver says that you have to do it within the time that you file a merits brief or a motion to dismiss. I think the essence of what Oliver is saying is once you do something, you need to go ahead and file this timeliness issue. If you're going to file a merits brief, put it in there. If you're going to file some sort of motion, put it in there. But Oliver is before our Rule 27F, right? At the time of Oliver, the rule was just basically raise it whenever you want. Right. It was before Rule 27F. So I'm not sure if when Oliver talks about timely filing, we now have a new rule on when something is timely filed. So I'm just wondering how much work Oliver can do now. Again, when we say response brief, we do call it a supplemental order. We do call it a supplemental brief. We do call it a supplemental response. If you want to look at ambiguities, that does say response. Well, this wasn't technically a response. It was a follow-up to a court order asking for additional briefing issues. So then if there's some type of ambiguity in 27F, I would say look to the case law. Oliver is there telling us once you file something, that's when you need to go ahead and do it. So our position is that they waived it. They forfeited that. Thank you. Mr. McIntyre, I see that you're court-appointed. We thank you very much for your service to the court today.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan